**LAMB v. SMITH, Collector of Internal Revenue.**

**No. 10134.**

United States Court of Appeals Third Circuit.

Argued April 17, 1950.

Decided July 28, 1950.

Joseph W. Bishop, Jr., Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Maurice P. Wolk, Sp. Assts. to the Atty. Gen., Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellant.

Israel Packel, Philadelphia, Pa. (Herbert G. Schick, and Speiser, Satinsky, Gilliland & Packel, all of Philadelphia, Pa., on the brief), for appellee.

Before MARIS, McLAUGHLIN, and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This appeal is from the entry of a judgment by the District Court on a jury verdict in favor of a taxpayer who sued to recover taxes paid as the result of an allegedly erroneous determination by the Commissioner of Internal Revenue that 90 per cent of the income of a limited partnership (made up of a family group) was to be attributed to the taxpayer.

The basic facts are not in dispute and may be summarized as follows:

In 1910 William A. Lamb ("taxpayer") [1] formed a partnership with his brother for the conduct of a commercial stationery business under the firm name of Lamb Brothers. In 1934 he purchased his brother's interest and operated the business as sole proprietor until 1942 when he decided he would like to have the business continued as a family partnership. He discussed the matter with his attorney and

1. Taxpayer died shortly before the trial and his executor (and son) William M., Lamb was substituted as plaintiff by order of the District Court.

the latter prepared a draft of a limited partnership agreement under which the taxpayer and his son William M. were to be general partners and his wife and two married daughters, Virginia and Doris, were to be limited partners. The taxpayer's motives, according to his son, seem to have been to give the business stability by its continuance before and after his death as a family partnership (taxpayer was then 65 years old); to permit his children to enjoy benefits from the business while he yet lived and could derive paternal gratification from that fact and to reward with partnership the industry of his son (who had been engaged in the business as an employe since 1934) without discriminating against his other loved ones. Saving in income taxes was only an "incidental reason".

The draft of the partnership agreement was reviewed at a family conference in mid-September. On September 25th taxpayer gave his wife $12,500, his daughters $4,500 each and his son $4,000. The money came from the taxpayer's personal funds,[2] and was deposited in each instance in the recipient's checking account. In making the gifts taxpayer told his wife and children that they could do as they wished with the money but that they would be "foolish" not to put some of it back in the business as partners.

Subsequently, on October 1, 1942, the articles of partnership were formally executed by the taxpayer, his wife and their children. The value of the business having been fixed at $40,000, the wife contributed $12,000 for a 30 per cent interest, and the three children $4,000 each for respective 10 per cent interests. The remaining 40 per cent interest went to the taxpayer in consideration of his contribution of $16,000 in net book value of assets in the old business.[3]

The partnership agreement contained the standard provisions appropriate for organization under the Uniform Partnership Act of Pennsylvania, 59 P.S. § 1 et seq. The taxpayer and his son reserved the right to decide whether profits should be distributed or left in the business.

Profits and losses were to be shared in proportion to capital contributions, except that limited partners were not to become liable beyond the amounts of their respective capital contributions. The limited partners were to have no right to participate in the conduct of the business nor to bind the partnership in any way. The right of general or limited partners to substitute new partners was limited. Only the general partners were authorized to draw checks on the accounts of the firm. A salary in the sum of $3,000 was fixed for the taxpayer and a minimum salary of like amount for his son. The agreement further provided that it could be amended by majority vote in interest but not so as to effect vested rights.

The wife and daughters never rendered any services to the business nor did they in any way participate in its management or control. The taxpayer's personal services to the business were not much different from those of other ordinary employes. Capital was the most important item in the business.

Profits were drawn regularly from the business and deposited in the personal bank accounts of each of the partners. At the end of the year, the capital account of each partner was increased by the gain attributable to that partner less the drawings.

Taxpayer's wife and daughters spent their shares of the distributed profits on the ordinary expenses of their households and families. Virginia and Doris, the daughters, had been living apart from the taxpayer's household since their respective marriages in 1934 and 1940.

Under the circumstances above set forth, the Commissioner determined, on Febru-

---

2. In order to make up the $25,500 presented to his family the taxpayer withdrew $5,000 from Lamb Brothers.

3. Immediately upon the formation of the new partnership and the payments de-

scribed the taxpayer withdrew $19,000 from the assets of the new firm. That sum, together with the $5,000 previously withdrawn by him (note 2), represented the total contributions made by his wife and three children.

ary 25, 1947, that there was no genuine partnership *for tax purposes* between the taxpayer and his wife and daughters, and that 90 percent of the partnership income was accordingly taxable to him. The Commissioner conceded that the son was a partner to the extent of his 10 per cent interest in the business.

Prior to the Commissioner's ruling the taxpayer and his wife had filed separate returns for the tax years here involved. During 1946 both taxpayer and his wife had separately made the required payments on estimated income. Subsequent to the ruling and as a consequence of it, they filed a joint return for the year 1946 on March 7, 1947 and took credit thereon for the payments made by the wife during 1946 on estimated income. The District Court, in accordance with the jury's finding that there was a "real" partnership, concluded that the taxpayer was entitled to revoke the election to file the joint return for 1946; the tax actually owing, as determined by the District Court, was calculated as if the taxpayer had filed a separate return for 1946. It may be noted, parenthetically, that the Collector here attacks the propriety of the District Court's action and asserts that in any event the taxpayer is taxable on 70 per cent of the partnership income for 1946 on the ground that his election to file a joint return for 1946 is binding and irrevocable under the law.

Principally, the Collector contends that the taxpayer presented no substantial evidence upon the basis of which the jury could find that the taxpayer's wife and daughters were partners for federal tax purposes and that the District Court should have accordingly directed a verdict in his favor. He asks a reversal of the District Court's judgment with instructions to enter judgment in his favor.

The crux of the Collector's argument is that the taxpayer failed to sustain the burden of establishing, in accordance with Commissioner of Internal Revenue v. Culbertson, 1949, 337 U.S. 733, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659, that "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." The evidence in the instant case, says the Collector, establishes there was no change in the real economic position of the taxpayer; he retained control over the business; there was a mere paper reallocation of income among an intimate family group and the income itself was devoted to purposes which satisfied taxpayer's natural desires. Lusthaus v. Commissioner, 1946, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Helvering v. Clifford, 1940, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788; Commissioner of Internal Revenue v. Tower, 1946, 327 U.S. 280, 290-291, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135.

In reply, the taxpayer urges that the District Judge, without objection by either side, submitted two questions to the jury which thereupon found that (1) the gifts to the wife and daughters were not conditioned upon their putting the money back in the business and (2) all the parties truly intended to join together for the purpose of presently carrying on the business and sharing in its profits. He asserts that under Commissioner v. Culbertson, supra, the question as to whether there was a "real" partnership is a question of fact; the evidence justified the jury's factual determination that the partnership in the instant case was "real", and that in any event we cannot and should not substitute our own conclusions or inferences for those of the traditional trier of facts. Additionally, taxpayer says, we cannot set aside the judgment as sought by the Collector since he failed to move for judgment under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and the only question raised on appeal is the correctness of the judgment.

Applicable to the questions presented by the instant appeal are the following well-established principles:

The term "partnership" as used in Sections 181, 182, Internal Revenue Code, means ordinary partnerships.[4] "A partnership is generally said to be created when persons join together their money,

4. 26 U.S.C.A. §§ 181, 182.

942

goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses. When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly *intended to join together* for the purpose of carrying on business and sharing in the profits or losses or both. And *their intention in this respect is a question of fact,* to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.'" Commissioner of Internal Revenue v. Tower, supra, 327 U.S. 286-287, 66 S.Ct. 535 (emphasis supplied); Lusthaus v. Commissioner, supra; Helvering v. Clifford, supra.

■ The rule stated applies in tax cases where the government challenges the existence of a partnership for tax purposes. In determining whether there was a true partnership for income tax purposes, the fact that there was no contribution of "original capital" or "vital services" is to be taken into consideration, but it is not conclusive. The test is: "* * * whether, *considering all the facts*—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the

present conduct of the enterprise. * * * Triers of fact are constantly called upon to determine the intent with which a person acted. * * * If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient." Commissioner v. Culbertson, supra, 337 U.S. 741-745, 69 S.Ct. 1214 (emphasis supplied).

■ The finding of fact that there is (or is not) a partnership by the trier of fact (Tax Court or jury) if supported by the evidence, is final. Davis v. Commissioner, 3 Cir., 1947, 161 F.2d 361.

■ Since it is decisively determined that the validity of a partnership, at least for federal income tax purposes, is a question of fact, it follows that, on the evidence of the instant case, the matter should have gone to the jury. The latter was properly and adequately instructed upon the legal principles involved as dictated by the Supreme Court in the Culbertson decision. The learned trial judge wisely submitted interrogatories to the jury [5] which pinpointed the ultimate issues of the case. Finally, those issues of fact being resolved by the jury, they are beyond our reach, for it is well-settled, indeed it would be a work of supererogation now to attempt to prove, that the historical function of the jury cannot be the subject of interference when the evidence permits reasonable minds to dis-

---

5. After denying the Collector's motion for a directed verdict, the District Court submitted to the jury two specific questions:
"The first question is this:
'Did the members of the Lamb family who signed the partnership agreement of October 1, 1942, really and truly intend to join together for the purpose of presently carrying on business and sharing in the profits or losses or both?'
"You will answer that 'yes' or 'no' as to each of the three ladies as follows:
'(a) As to Mrs. Lamb: 'Yes'—or 'No'—'

'(b) As to Mrs. Lambert: 'Yes'—or No'—'
'(c) As to Mrs. Sowton: 'Yes'—or 'No' —'
"That is the first question.
"The second question is:
'Did Mr. Lamb make the gifts to his wife and daughters upon condition that they put the money back into the business?'
"You answer that question 'Yes'—or 'No'—"
The jury answered the first question in the affirmative as to each individual, and the second question in the negative.

agree. The credibility of the witnesses, the critical evidence, and the inferences to be drawn therefrom, have been weighed and determined by the fact-finding body. It would serve no useful purpose to review in detail the evidence. It remains for us to say only that we cannot point to any lack of reasonableness of the conclusion reached by the jury.

In view of our determination on this issue, we need not be concerned with plaintiff's alternative defensive argument based on Rule 50(b).

■ However, we are in agreement with the Collector on his second point, that the joint return filed by taxpayer and his wife in 1946 is binding with respect to the tax treatment of 70 per cent of the income of the partnership attributable to their interests therein. The decisions are long-standing to this effect. Rose v. Grant, 5 Cir., 1930, 39 F.2d 340, certiorari dismissed 283 U.S. 867, 51 S.Ct. 342, 75 L.Ed. 1471; Morris v. Commissioner, 2 Cir., 1930, 40 F. 2d 504; Champlin v. Commissioner, 10 Cir., 1935, 78 F.2d 905; Binder v. Welch, 9 Cir., 1939, 107 F.2d 812; Hayes v. Commissioner, 10 Cir., 1947, 161 F.2d 689; Biggers v. Commissioner, 1939, 39 B.T.A. 480; Barbetti v. Commissioner, 1947, 9 T.C. 1097; Ferguson v. Commissioner, 1950, 14 T.C.No. 103. These cases are sufficiently explicative.[6]

It is contended here that the election to file the joint return, pursuant to 26 U.S.C. A., § 51(b), was the result of the Commissioner's refusal to recognize any interest in the partnership of taxpayer's wife, and that she signed the return as the most expeditious way to gain a refund of payments made by her on her estimated tax for 1946. Assuming equitable considerations

have some place in resolving the issue, we are of the opinion that those here asserted are totally lacking in persuasion. The Commissioner's refusal to recognize the partnership was not a dispositive determination, witness this action, and it did not prevent taxpayer from filing a single return. Compare Binder v. Welch, supra. Indeed, the alternatives available to the taxpayer and his wife nullify any argument that they were deprived of a free election by the erroneous conclusion of the Commissioner, particularly since, in 1946, the parties' tax return was quite simple, involving only income from the partnership and none but the most ordinary deductions. That the joint return afforded the most expeditious method of obtaining credit for the estimated tax paid by Mrs. Lamb during 1946[7] certainly could not have been a significant economic factor since the estimated tax paid by her was $1912.88, while the total income reported for that year was $58,195.48. Moreover, satisfactory means of obtaining credit or refund were available to Mrs. Lamb under the tax laws, and it was not at all necessary to file the joint return for that purpose.

We conclude, therefore, that the taxpayer and his wife, with full knowledge of the facts, elected to file a joint return in order to reap an immediate advantage. They reserved the principal issue, the validity of the partnership, for future disposition, and it is only now when the decision on that issue favors taxpayer that he presses the matter of the joint return.

For the reasons stated, the verdict of the jury will not be disturbed but the judgment of the District Court will be vacated, and the cause remanded in order to permit the redetermination of the 1946 tax liability in accordance with this opinion.

**6.** See Mertens, Federal Income Taxation (1942) Sec. 47.10.

It may be noted that while the position of the Commissioner to this effect was contained in I.T. 1372, I-1 C.B. 238 (June 26, 1922) and see I.T. 2535, IX-1 C.B. 125, it is now effectively incorporated in the current regulations. Regulations 111, Sec. 29.51-1(b), as amended T.D. 5687, 1949-1 C.B. 9.

**7.** This point, of course, relates to Mrs. Lamb, who is not directly involved in this action. There is authority that taxpayer's liability on the joint return might not be affected: Hayes v. Commissioner, 10 Cir., 1947, 161 F.2d 689.