**McCORD v. GRANGER.**
Civ. No. 122.

United States District Court,
W. D. Pennsylvania.

Jan. 25, 1952.

Enoch C. Filer, Erie, Pa., for plaintiff.

Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, John W. Fisher, Sp. Assts. to Atty. Gen., for defendant.

FOLLMER, District Judge.

This is an action for the recovery of $2,787.38, representing a portion of the income taxes paid by the plaintiff (hereinafter referred to as the taxpayer) for the year 1946, with interest thereon. The case was tried to the Court and without a jury; and the Court, having heard and considered the evidence, finds the facts specially and separately states conclusions of law thereon as follows:

Findings of Fact.

1. The plaintiff-taxpayer, Ralph B. McCord, is a resident of North East Township, Erie County, Pennsylvania.

2. On March 15, 1947, the taxpayer filed an income tax return for 1946 on Form 1040, with the Collector of Internal Revenue at Pittsburgh, Pennsylvania, showing a net income of $20,210.79 and tax of $6,247.88, all of which was paid.

3. On the said return, under the heading "List your own name. If married and your wife (or husband) had no income, or if

this is a joint return of husband and wife, list name of your wife (or husband).", the taxpayer listed his own name and the name of his wife, Elizabeth McCord. To the question "Is your wife (or husband) making a separate return for 1946?" the taxpayer answered "No." The return was signed only by the taxpayer.

4. In a schedule attached to the return, under the heading "Schedule C—Profit or Loss from Business", there was shown, inter alia, the following items:

Sale of Real Estate

| Sale of 21 Lots | $12,300.00 |
|---|---|
| Cost of lots | 3,932.65 |
| | $8,367.35 |

5. On April 3, 1947, taxpayer filed a claim for refund for overpayment of tax in the amount of $1,907.93, in which he set forth that only one-half of the proceeds from the sale of the lots was income taxable to him and the other one-half was income taxable to his wife, since the lots were owned as "tenants by the entirety."

6. Also, on April 3, 1947, taxpayer filed an income tax return for 1946 marked "Amended Return." In a schedule attached to that return, under the heading "Schedule C—Profit or Loss from Business," there was shown, inter alia, the following items:

Property owned as "Estate by Entirety"

Sale of Real Estate

| Sale of 21 Lots | $12,300.00 |
|---|---|
| Cost of Lots | 3,932.65 |
| | $8,367.35 |

To this was added an additional item of $914.03, not here involved, making a total of $9,281.38, and the following:

| ½ Ralph B. McCord | $4,640.69. |
|---|---|
| ½ Elizabeth McCord | 4,640.69. |

This amended return showed net income of $15,656.10 and tax of $4,339.95.

7. On April 3, 1947, Elizabeth McCord filed an income tax return for 1946, in which she reported half of the gain from the sale of the twenty-one lots, treating the income as ordinary income, and paid a tax of $851. thereon.

8. On May 21, 1947, Elizabeth McCord filed an income tax return for 1946 marked "Amended Return", in which she reported half the gain from the said lots as capital gain. At the same time, she filed a claim for refund on the ground that the gain was capital gain and the Government refunded the difference between the amount of tax she had previously paid in April 1947, in which she treated the proceeds of the sale of lots as a business gain, and the amount of tax liability which she set forth in the so called "Amended Return" in which she treated the proceeds from the sale of lots as a capital gain.

9. On May 21, 1947, taxpayer filed an income tax return for 1946 marked "Amended Return." On the line for the taxpayer's name on Page 1, only the name of Ralph B. McCord was shown. Under the heading "List your own name. If married and your wife (or husband) had no income, or if this is a joint return of husband and wife, list name of your wife (or husband).", the names of Ralph B. McCord and Eva Lyons, Mother-in-law, were listed. To the question "Is your wife (or husband) making a separate return for 1946?", the answer was "Yes".

10. In a schedule attached to this return, under the heading "Property owned as 'Estate by Entirety' ", there was shown, inter alia, the following items:

Sale of Real Estate

| Sale of 21 Lots | $12,300.00 |
|---|---|
| Cost of Lots | 3,932.65 |
| | $8,367.35 |
| ½ Ralph B. McCord | $4,183.67 |
| ½ Elizabeth McCord | 4,183.68. |

The amount of $4,183.67 was carried into a separate "Schedule of Gains and Losses" in Column 8 under "Long-Term Capital Gains and Losses—Assets Held for More Than 6 Months" of which half or $2,091.84 was entered in Column 10, and then entered as a part of a larger amount of $2,373.97 on line 5 on Page 1 of the return.

11. On the same date, May 21, 1947, taxpayer filed a claim for refund of $2,787.-38 on the following grounds:

"Capital gain was realized on sale of lots. Taxpayer did not hold the property primarily for sale in the ordinary course of his business. They acquired the property as an investment and did no more than qualify the land for F.H.A. loans so it would sell and execute the deeds as lots were bought and sold.

"This is an amendment to prior claim filed to correct error in reporting entire income from property owned as 'Estate by entirety.' (Sic) Income from property held in this way is taxable, half to the husband and half to the wife."

This claim forms the basis of the instant suit.

12. Elizabeth McCord, wife of taxpayer, took no part in the preparation of the original tax return filed by her husband for 1946, did not see it before it was filed, and did not learn of its having been filed until later told by her husband.

13. Taxpayer is a non-practicing veterinarian, and since 1940 has been engaged as Register of Wills of Erie County, Pennsylvania.

14. At no time has taxpayer ever been engaged as a real estate broker or salesman or developer, has never belonged to any real estate board, nor advertised himself as a real estate dealer or broker.

15. Taxpayer's prior real estate dealings were as follows: in 1918 he inherited three and one-half acres of lake front property which he sold in 1949; in 1913 he bought a home at North East, Pennsylvania, which he sold in 1948; in 1924 he bought a fruit farm which he traded for a flat in 1929, the latter of which he sold in 1930; in 1944 he purchased for resale Lots 12, 13, and 14 in South Shore Heights Subdivision, title was taken in name of taxpayer and wife as tenants by the entirety. This subdivision is located about one-half mile north of the center of the Borough of North East and about three quarters of a mile from Lake Erie.

16. By deed dated November 7, 1945, taxpayer and his wife purchased and took title to 37 lots, Nos. 15 to 51 inclusive, in South Shore Heights Subdivision, Erie County, intending to build a home on some of the lots.

17. As to the remaining lots, taxpayer planned to improve them, do some grading and get water to them, and thought he might then be able to sell them.

18. Taxpayer and his wife did build a home on two of the lots in the subdivision, partly in 1948 and partly in 1949, where they now live.

19. At the time taxpayer and his wife purchased the 37 lots, he learned that there was a one and one-half inch water line serving the adjoining house, to which line he expected to connect.

20. After the purchase of the 37 lots, taxpayer learned that it would not be possible for them to connect to the existing water line.

21. The Borough of North East was not interested in extending their water lines to make same available to taxpayer.

22. Taxpayer organized a water company to supply water to the said lots, improved the road in the area, did some grading, put in some improvements, going to considerable expense, and made some changes in the layout of the streets, all of which was done to increase the value of the lots and thus add to their salability.

23. Taxpayer sold 21 lots to eight different people in seven or eight months in 1946.

24. The lots were bought and held for sale.

### Discussion.

We are here first met with the problem as to whether the income tax return filed by the taxpayer on March 15, 1947, was a joint return for himself and his wife and, if so, did it constitute a binding election to file in that manner? The question is not whether the taxpayer's wife is bound by the taxpayer's original return but whether the taxpayer himself is bound by it.

Section 51(b) of the Internal Revenue Code, as amended,[1] applicable to the year 1946, 26 U.S.C. § 51(b), 1946 Ed., provides as follows: "(b) Husband and Wife. A husband and wife may make a single return jointly. Such a return may be made even though one of the spouses has neither gross income nor deductions. If a joint return is made the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several. * * * The status of individuals as husband and wife shall be determined as of the last day of the taxable year."

Treasury Regulation 111, Sec. 29.51–1, Individual Returns, promulgated under the Internal Revenue Code, as amended by T. D. 5425, 1945 Cum.Bull. 10, 25, 26, provides as follows:

"(b) Joint returns. * * * For taxable years beginning after December 31, 1943, a husband and wife occupying the marital status as of the last day of the taxable year may elect to make a joint return even though one of the spouses has no gross income or deductions, and even though the spouses are not living together at any time during the taxable year. If a joint return is made the tax shall be computed on the aggregate income. The liability with respect to the tax shall be joint and several. * * *

"A joint return of a husband and wife (if not made by an agent, see § 29.51–2) shall be signed by both spouses. An oath is not necessary, but both spouses shall verify the return as provided in section 51. If signed by one spouse as agent for the other, authorization for such action must accompany the return. (See § 29.-51–2.) The spouse acting as agent for the other shall, with the principal, assume the responsibility for making the return and incur liability for the penalties provided for erroneous, false, or fraudulent returns."[2]

▋ The returns filed by the taxpayer's wife are not in evidence but the record indicates that the income she reported was half the gain from the sale of the twenty-one lots. The taxpayer reported in his original return the entire gain from the sale of these lots, which obviously included the entire income subsequently reported by the wife in her individual return, and thus comprised the entire income of both himself and his wife and was therefore a joint return.

The taxpayer's original return, filed on the last day for filing returns, clearly indicated the marital status of taxpayer and his wife, that she either had no income or that this was a joint return, and also that she was not filing a separate return. This puts the taxpayer between the horns of the dilemma because if the wife had no income from the sale of the lots, the present claim is inconsistent; if, on the other hand, it was not a joint return and she had taxable income from the said lots, then certainly she was delinquent in filing her return.

▋ The provisions of Treasury Regulation 111, Sec. 29.51–1, Appendix, supra, requiring joint returns to be signed by both spouses, are obviously intended to safeguard the Commissioner against the claims of non-signing spouses who may later attempt to challenge any liability asserted against them, and being a purely protective measure may be waived by the Commissioner. The original return therefore carrying every indication that it was a joint return, and the liability of the spouses in the case of a joint return being several, there is no reason why the husband, taxpayer in this case, who actually signed the return, could not pay the entire tax liability disclosed therein to be due from himself and his wife.

▋ The rule has been thoroughly established that where a husband and wife have elected to file a joint return, or separate returns, they may not after the due date of the returns (in the instant case the due date for returns for the year

1. The amendment to the Internal Revenue Code of May 29, 1944, Chapter 210, Section 11(a), 58 Stat. 240, was in effect during the period here involved.

2. See 26 CFR, 1944 Supp., 29.51–1(b).

1946 was March 15, 1947) file amended returns on the other basis.[3]

In Rose, Collector of Internal Revenue, v. Grant, 5 Cir., 39 F.2d 340, 341, the court stated the rule as follows: "The statute gives the right to the husband and wife to file either a separate or a joint return, but not to change from one to the other at any time it appears to their advantage to do so. The impossibility under such a system of determining the amount of the tax due as required by section 250(b) of the Revenue Act of 1921 (42 Stat. 264), as well as the administrative inconvenience thereof, condemns it."[4]

With the multiple returns filed in this case, it would be difficult to find a situation which could better justify the existence of such a rule. The taxpayer having elected to file his return on one basis, cannot change to another after the last day for filing returns merely for the sake of deriving some reduction of the tax due by him.[5]

In view of the conclusion thus arrived at on the first question posed herein, it becomes unnecessary to consider and determine whether the gain from the sale of the lots in question is taxable as long term capital gain or as ordinary income.

### Conclusions of Law.

1. The Court has jurisdiction over the subject matter of the action and over the parties.

2. The taxpayer having elected to file a joint return for himself and his wife for the year 1946, and having so filed on the last day for filing returns therefor, to wit, March 15, 1947, has no right to change from the method elected after said last day for filing.

Judgment will be entered for defendant.

---

3. Mertens "Law of Federal Income Taxation," Vol. 8, § 47.10 (Authorities cited in Note 40).

4. See also, United States v. Pettigrew, 9 Cir., 81 F.2d 666; Hayes v. Commissioner of Internal Revenue, 10 Cir., 161 F.2d 689; Lamb v. Smith, 3 Cir., 183 F.2d 938–943.

5. Commissioner of Internal Revenue v. Saunders, 5 Cir., 131 F.2d 571.