Mihran **DEMIRJIAN** and Mabel Demirjian, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**ESTATE** of Anne **DEMIRJIAN,** Deceased, Frank Demirjian, Executor, and Frank Demirjian, Surviving Spouse, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE.**

Nos. 19542, 19543.

United States Court of Appeals, Third Circuit.

Argued Dec. 13, 1971.

Decided March 7, 1972.

Ralph Neibart, Newark, N. J., for appellants.

John A. Townsend, Dept. of Justice, Tax Div., Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Richard W. Perkins, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before VAN DUSEN and HUNTER, Circuit Judges, and LAYTON, District Judge.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

The petitioning taxpayers, Anne and Mabel Dermirjian,[1] have filed a timely petition for review of an adverse decision of the Tax Court[2] affirming a finding of tax deficiencies for 1962[3] by the Commissioner of Internal Revenue. The tax deficiencies were based on the failure to report $54,835.00 in gain for the taxable year 1962. Plaintiffs maintain that the gain in question is covered by the nonrecognition provisions of Code Section 1033.[4] As pointed out below, we agree with the ruling of the Tax Court that § 703 of the Internal Revenue Code requires that the nonrecognition of gain election and replacement under § 1033

---

1. Anne Demirjian was deceased prior to the institution of this suit and is represented here by her husband in his capacity as executor of her estate. Plaintiffs' husbands were also named as parties plaintiff due to the filing of joint tax returns with their wives during the years in question.

2. Demirjian v. Comm'r of Internal Revenue, 54 T.C. 1691 (1970).

3. Deficiencies of $6,891.67 in the tax shown on the return of Mihran and Mabel Demirjian and $6,148.62 in the tax shown on the return of Frank and Anne Demirjian were assessed by the Commissioner.

4. "SEC. 1033. INVOLUNTARY CONVERSIONS.

"(a) General Rule.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsory or involuntarily converted—

\*      \*      \*      \*      \*

"(3) Conversion into money where disposition occurred after 1950.—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

"(A) Nonrecognition of gain.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such

be made by Kin-Bro Realty, a partnership, and that the replacements by plaintiffs individually were thus ineffective.

The facts, as stipulated in the proceedings before the Tax Court, show that Anne and Mabel Demirjian [5] each owned 50% of the stock of Kin-Bro Realty Corporation, which had acquired title to a three-story office building in Newark, New Jersey, in October 1944. On November 3, 1960, the corporation was dissolved and its chief asset, the office building, was conveyed by deed to "Anne Demirjian . . . and Mabel Demirjian . . . partners trading as Kin-Bro Real Estate Company." Although no formal partnership agreement was executed, Anne and Mabel did file a trade name certificate indicating that they intended to conduct a real estate investment business at the Newark office building under the name of Kin-Bro Real Estate Company. The office building, which constituted Kin-Bro's sole operating asset, was conveyed to the Newark Housing Authority on September 12, 1962, after an involuntary condemnation proceeding. In the deed of conveyance the grantors are listed as "Anne Demirjian and Mabel Demirjian, partners trading as Kin-Bro Real Estate Company." The net proceeds of the sale were distributed to Anne and Mabel in amounts equal to approximately 50% of the total sale price. [6] At this point, both Anne and Mabel apparently elected to replace the property with equivalent property in order to take advantage of the nonrecognition of gain provision contained in § 1033 of the Internal Rev-

enue Code. Normally gain resulting from the sale or exchange of investment real property is taxable,[7] but § 1033 provides that if property is involuntarily converted and the proceeds are used to replace it with substantially equivalent property within one year, then gain is recognized only to the extent that the amount received due to the conversion exceeds the purchase price of the replacement property. The reinvestments, however, were made by Anne and Mabel as individuals and not through the partnership.[8] On April 15, 1963, Anne invested $40,934.05 of her share of the proceeds in property which was similar to the condemned property. Mabel was unable to find suitable replacement property within the one-year replacement period,[9] and, by letter of October 17, 1963, she made a written application to the District Director of Internal Revenue, Newark, New Jersey, for an extenstion of time in which to make such a replacement. In a letter dated January 16, 1964, the District Director stated:

"In a letter dated October 17, 1963 received from Mr. Ralph Niebart and subsequent correspondence, an extension of time was requested for the purpose of replacing your share of the partnership property that was owned by Kin-Bro Real Estate Company (a partnership). The property was sold to the Housing Authority of the City of Newark on September 12, 1962 under threat of condemnation.

"You have stated that although you have made a continued effort to re-

---

other property or such stock. Such election shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. For purposes of this paragraph. . . ."

5. Plaintiffs Anne and Mabel Demirjian are sisters-in-law.

6. Each received $57,500. After this distribution, the only remaining assets of the partnership were $1,460.02 in cash and $3,000 in notes and accounts receivable.

7. 26 U.S.C. § 1002.

8. Stipulation No. 7 provided that "Kin-Bro Real Estate Company did not replace the rental property, which was its only operating asset."

9. The replacement to be effective must be made within one year of the involuntary conversion for property involuntarily converted prior to December 31, 1969, 26 U.S.C. § 1033(a) (3) (B) (i) (1954), as amended, 83 Stat. 723 (1969).

place the converted property, you have not been successful to date.

\*    \*    \*    \*    \*    \*

"Based on the information submitted, together with the data already in our file, extension is hereby granted until December 31, 1964, within which to complete the replacement of the converted property." [10]

On February 7, 1964, Mabel invested $45,711.17 in similar real estate. Neither Anne nor Mabel reported any portion of the gain realized on the condemnation sale in their initial returns for the 1962 tax year. In 1964 Anne and Mabel filed amended 1962 joint returns with their husbands, reporting the excess of their distributive share from the condemnation sale over the cost of their respective replacement property as long-term capital gains. [11] The Commissioner of Internal Revenue disagreed with these computations and assessed deficiencies [12], reasoning that the § 1033 election for nonrecognition of gain and replacement with equivalent property

could only be made by the partnership under the terms of § 703(b) of the Code. [13] The Tax Court affirmed the Commissioner's finding of deficiencies and plaintiffs here appeal that decision.

■ In reviewing a decision of the Tax Court, this court is normally limited in its scope of review by the clearly erroneous test of Rule 52(a), F.R.Civ.P. [14] However, in cases such as the instant action, where the facts have been fully stipulated and no testimony was taken, [15] the Court of Appeals may, within certain limits, substitute its factual conclusions and inferences for those of the Tax Court. [16]

Petitioners' first contention on this appeal is that the Newark office building was owned by Anne and Mabel as tenants in common, not as partners, and that, therefore, the § 1033 nonrecognition of gain election and replacement was properly made by them in their individual capacities as co-tenants. On the basis of the record before the Tax Court, we find that the property in

---

10. As the excerpts from the letter above indicate, the District Director recognized that the replacement was being made by the individual partners.

11. Anne reported $24,490.95 in long-term capital gains, while Mabel reported $19,713.83 of such gains.

12. See note 3, *supra*.

13. Section 703(b) of the Internal Revenue Code provides:

"(b) *Elections of the Partnership.*— Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership, except that the election under section 901, relating to taxes of foreign countries and possessions of the United States, shall be made by each partner separately."

The Report of the House Committee on Ways and Means states in connection with the above-quoted section:

"The bill provides that all elections with respect to income derived from a partnership (other than the election to claim a credit for foreign taxes) are to be made at the partnership level and not by the individual partners. *This rule recognizes the partnership as an entity for purposes of income re-*

*porting.* It avoids the confusion which would occur if each partner were to determine partnership income separately for his own purposes." H.Rept.No. 1337, 83d Cong., 2d Sess. (1954), 3 U.S.Code Cong. & Admin.News (1954) pp. 4017, 4092. (Emphasis supplied.)

14. *See* Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Estate of Taschler v. United States, 440 F.2d 72 (3d Cir. 1971); 26 U.S.C. § 1482; Moore's Federal Practice, Vol. 5A, ¶ 52.03(5) (1970).

15. Counsel for plaintiffs submitted their cases on the stipulations and called no witnesses at the trial before the Tax Court. N.T. 13.

16. *See* Central R. Co. of New Jersey v. Manufacturers Hanover Trust Co., 421 F.2d 604, 606 n. 5 (3d Cir.), cert. denied, 398 U.S. 949, 90 S.Ct. 1867, 26 L.Ed.2d 289 (1970); Consolidated Sun Ray, Inc. v. Lea, 401 F.2d 650, 658 n. 34 (3d Cir. 1968), cert. denied, 393 U.S. 1050, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969); United States v. United Steel Workers of America, 271 F.2d 676 (3d Cir.), aff'd, 361 U.S. 39, 80 S.Ct. 1, 4 L.Ed.2d 12 (1959).

question was owned by Kin-Bro Realty, a partnership,[17] composed of Anne and Mabel Demirjian.[18] It is noted that several federal cases have ruled that taxpayers such as petitioners who represent, in their dealings with the Internal Revenue Service, that property is owned by a partnership are bound by such representations.[19]

Petitioners next contend that even if the office building was owned by the partnership, the election and replacement with equivalent property under 26 U.S.C. § 1033(a) (3) were properly made by them in their capacity as individual partners. We agree with the Tax Court's determination that 26 U.S.C. § 703(b) requires that the election and replacement under § 1033 be made by the partnership and that replacement by individual partners of property owned by the partnership does not qualify for nonrecognition of the gain.[20] Section

---

17. The following stipulated facts, taken together, support the finding of a partnership:

    (a) Stipulation 4—The deed of conveyance from Kin-Bro Realty Corp. was issued to "Anne Demirjian . . . and Mabel Demirjian . . . partners trading as Kin-Bro Real Estate Company."

    (b) Stipulation 5—The deed of conveyance to the Newark Housing Authority lists the grantors as "Anne Demirjian and Mable Demirjian, partners trading as Kin-Bro Real Estate Company."

    (c) Stipulation 6—Kin-Bro Real Estate Company filed partnership tax returns on Form 1065 for the taxable years 1960–1962.

    (d) Stipulation 11 and Exhibit 11–K —Anne and Mabel filed a trade name certificate which listed them as trading under the firm name of Kin-Bro Real Estate Company.

    (e) Stipulation 13—The offices in the building were rented to several tenants.

    (f) Stipulation 16—The tenants paid their rent to Kin-Bro Realty and the rental payments were deposited into a checking account entitled "Anne Demirjian and Mabel Demirjian, trading as Kin-Bro Real Estate Company."

18. 26 U.S.C. § 761 defines a partnership as including "a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on. . . ." This definition is amplified in the Federal Income Tax Treasury Regulations, 26 C.F.R. § 1.761–1(a), which provides that "the term 'partnership' is broader in scope than the common law meaning of partnership, and may include groups not commonly called partnerships. . . . Mere co-ownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. . . . Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if co-owners of an apartment building lease space and in addition provides services to the occupants either directly or through an agent." Applying the facts as outlined in footnote 17, *supra*, we find that a partnership existed. *See* Rothenberg v. Commissioner, 48 T.C. 369 (1967). The facts, when taken together, establish the intent of Anne and Mabel to conduct their real estate business as a partnership. *See* Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949); Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670 (1946); Smith's Estate v. Commissioner of Internal Revenue, 313 F.2d 724 (8th Cir. 1963); Lamb v. Smith, 183 F.2d 938, 942 (3d Cir. 1950).

19. Petitioners filed partnership tax returns and in other correspondence with the IRS referred to a partnership as owning the office building. Exhibits 7–G, 8–H. *See* Sterno Sales Corp. v. United States, 345 F.2d 552, 554, 170 Ct.Cl. 506 (1965); Maletis v. United States, 200 F.2d 97, 98 (9th Cir. 1952), cert. denied, 345 U.S. 924, 73 S.Ct. 782, 97 L.Ed. 1356 (1953); Sherman v. United States, 141 F.Supp. 369, 370 (E.D. Pa.1956), aff'd, 240 F.2d 600 (3d Cir. 1957).

20. The following entry was made on schedule D of the 1962 return filed by Kin-Bro Realty:

    "Land and Building Condemnation Sale —intend to purchase similar property." As noted in footnote 8, *supra*, the partnership did not in fact reinvest the proceeds of the condemnation in any property at any time.

    We agree with the Commissioner that the Estate of Morris, 55 T.C. 636 (1971)

703(b) provides, with exceptions not relevant here, that any election which affects the computation of taxable income derived from a partnership must be made by the partnership.[21] The election for nonrecognition of gain on the involuntary conversion of property would affect such computation and is the type of election contemplated by § 703(b). The partnership provisions of the Internal Revenue Code[22] treat a partnership as an aggregate of its members for purposes of taxing profits to the individual members and as an entity for purposes of computing and reporting income.[23] In light of this entity approach to reporting income, Congress included § 703(b) to avoid the possible confusion which might result if each partner were to determine partnership income separately only on his own return for his own purposes.[24] To avoid the possible confusion which could result from separate elections under § 1033(a), the election must be made by the partnership as an entity, and the failure of the partnership to so act results in the recognition of the gain on the sale of partnership property.

██ Petitioners' final contention is that the Commissioner is estopped from denying that a valid election and replacement were made under § 1033. Two separate grounds for estoppel are alleged. The first ground, that the petitioners have conformed their conduct to existing interpretations of the law and the Commissioner may not "invoke a retroactive interpretation to the taxpayer's detriment,"[25] is clearly without merit. The second alleged ground is that the Commissioner is estopped by the implicit approval of the individual partner's election and replacement by the District Director for Newark in his letter of January 16, 1964.[26] Even if we were to accept the letter as a justifiable basis for detrimental reliance, petitioners have demonstrated no such reliance[27] and, furthermore, the doc-

(relied on by amicus curiae), is significantly distinguishable on its facts from this case, since the replacement in that case was made by a testamentary trustee who was treated under the facts to be the "representative" of a decedent who had made the election for nonrecognition of gain or involuntarily converted property prior to his death. *Cf.* In re Goodman's Estate, 199 F.2d 895 (3d Cir. 1952). We believe that the various amendments to the Internal Revenue Code, cited by the amicus curiae (brief at 7–13), designed to expand the scope of nonrecognition of gain on involuntarily converted property culminating in P.L. 91–646, 84 Stat. 1894 (1971), require the conclusion that Congress is able and desirous of giving relief to taxpayers in such situations by its own statutory enactments and the courts should not usurp the function of Congress in this field. Furthermore, nonrecognition could have been achieved in this situation under the applicable congressional provisions of the Tax Code if the partnership had made the replacement contemplated by § 1033(a). Also it is noted that no amended partnership return for 1962 was filed by the partnership as contemplated by the regulations. Reg. § 1.1033(a)–2(c).

21. 26 U.S.C. § 703(b) (1954), as amended, P.L. 89–570 (effective after 9/12/66), P.L. 91–172 (effective after 12/31/69).

22. 26 U.S.C. §§ 701–771.

23. Petitioners contend that since a partnership is not a "taxpayer", 26 U.S.C. § 7701(a) (14), it cannot make an election under § 1033, which provides that an election must be made by a taxpayer. It seems clear that in adopting the entity approach to reporting income, Congress intended that a partnership be considered a taxpayer for purposes of computing and reporting income.

24. See Sen.Rep.No.1622, 83 Cong., 2d Sess., pp. 89–90, 3 U.S.Code Cong. & Admin.News (1954) pp. 4621, 4721–4722; H.Rep.No.1337, 83 Cong., 2d Sess., pp. 65–66, 3 U.S.Code Cong. & Admin.News (1954) pp. 4017, 4091–4092. See, also, footnote 13, *supra*.

25. Petitioners' brief at 27.

26. See note 10, *supra*, and accompanying text.

27. Anne and Mabel had already received their distributive shares prior to the date of the District Director's letter and had decided to make individual re-

trine of estoppel does not prevent the Commissioner from correcting errors of law.[28]

For the foregoing reasons, the September 1, 1970, orders of the Tax Court, in accordance with its opinion of that date, will be affirmed.

placements. Also, the time for replacement by the partnership had already expired by the time the letter was received.

28. *See* Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957), rehearing denied, 353 U.S. 989, 77 S.Ct. 1279, 1 L.Ed.2d 1147 (1957).