ALEC ROSEFSKY AND EDITH ROSEFSKY, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JOSEPH A. D'ESTI AND HELEN T. D'ESTI, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1022–76, 1023–76.　　Filed September 12, 1978.

*Eugene E. Peckham* and *M. Elizabeth Bradley,* for the petitioners.

*Barry J. Finkelstein,* for the respondent.

STERRETT, *Judge:* These cases were consolidated for purposes of trial, briefs, and opinion on joint motion of the parties.

---

Involved are deficiencies in petitioners' Federal income tax for their calendar year 1970 as follows:

| | | |
|---|---|---|
| Docket No. 1022–76 | Alec and Edith Rosefsky | $6,739.39 |
| Docket No. 1023–76 | Joseph A. and Helen T. D'Esti | 5,230.21 |

The only issue before the Court is whether the statute of limitations bars respondent's assessment and collection of the deficiencies in income tax due from petitioners for the year 1970.

### FINDINGS OF FACT

This case was submitted under Rule 122, Tax Court Rules of Practice and Procedure; hence all of the facts have been stipulated and are so found.

At the time they filed their petitions herein, petitioners Alec and Edith Rosefsky and Joseph A. and Helen T. D'Esti resided in Binghamton, N. Y. The Rosefskys and D'Estis both filed their individual returns with the District Director of Internal Revenue at Buffalo, N. Y. While not specifically stated it would appear that both the Rosefskys and D'Estis have the calendar year as their tax accounting period. While the D'Estis filed their return for the taxable year 1970 on or before April 15, 1971, the Rosefskys did not file their return until October 15, 1971, pursuant to an extension granted by the District Director of Internal Revenue. Edith Rosefsky and Helen T. D'Esti are parties to this action only because they joined in the filing of these returns. Accordingly, Alec and Joseph will be referred to as petitioners.

Beginning in at least 1960, petitioners were engaged as partners in a partnership known as Alec Rosefsky and Joseph A. D'Esti (hereinafter referred to as the partnership). In 1960 the partnership purchased the real property located at 60 Hawley Street, Binghamton, N. Y. In 1965 the property was condemned by the City of Binghamton. The partnership received some payment for the property in 1965, but received nothing in excess of basis and realized no gain thereon until 1970. In 1970 the partnership filed a timely partnership income tax return and expressly elected to replace the condemned property, thereby not recognizing gain in 1970, pursuant to section 1033 of the Internal Revenue Code of 1954. While not specifically stated, we assume that, like its principal partners, the partnership is on a calendar year basis.

As of December 14, 1972, the partnership had not replaced the condemned property. On that date the partnership requested an extension of time in which to replace. On January 19, 1973, respondent denied the partnership's request, saying:

> The request for an extension must be made by the end of the year following the first year a gain is realized. Therefore, you had until December 31, 1971 to request an extension—regulations 1.1033(a)–2(c)(3).

On November 24, 1975, respondent issued notice of deficiency to both the Rosefskys and D'Estis. The notice to both petitioners grew out of their alleged liability as partners as is shown by the following quote from the Rosefskys' 90-day letter:

> It is determined that the income of the partnership of Alec Rosefsky and Joseph A. D'Esti, in which you have a 50 percent interest, is to be increased for the taxable year ended December 31, 1970. Accordingly, your distributive share of the partnership income is increased as follows * * *

The gain on the condemnation of the real property totaled $25,178.04 in long term capital gain and $989.28 in ordinary income—50 percent of which was income to each of the partners.

## OPINION

Section 1033 of the 1954 Code first appeared in the Revenue Laws as 112(f) of the Revenue Act of 1921. Secs. 202(d) and 214(a)(12), Revenue Act of 1921, 68A Stat. 303, 305. In 1921 the section was designed to relieve taxpayers whose ships were sunk by submarines or requisitioned for use by the Government. *American Natural Gas Co. v. United States*, 279 F.2d 220, 225–226 (Ct. Cl. 1960). As presently enacted, the section is of much broader scope and deals with a wide range of involuntary conversion situations, including the condemnation of real property held for productive use in the trade or business of the taxpayer, or for investment. Sec. 1033(f).

In 1965 when the real property involved herein was condemned, section 1033(a)(3)(B)(i) provided for a 1-year replacement period within which the proceeds of a condemnation on which the taxpayer realized gain had to be expended for the purchase of property similar or related in service or use, or a request for an extension of the replacement period had to be made.[1] This 1-year period began on the "disposition" of the

---

[1] In 1965 sec. 1033 provided as follows:

converted property, or the earliest date of threat or imminence of requisition or condemnation of the converted property, whichever was earlier, and ended 1 year after the close of the first taxable year in which any part of the gain was realized. "Disposition" was defined in section 1033(a)(2) to mean "destruction, theft, seizure, requisition, or condemnation of the converted property." Sec. 1033(a)(2), I.R.C. 1965; sec. 1033(a)(2)(E)(ii), I.R.C 1978. In 1969 section 1033(a)(3)(B)(i) was amended to make the replacement period 2 years from the end of the taxable year in which gain was first realized.[2] This amendment applies, however, only to dispositions occurring after December 30, 1969. Sec. 915(b), Tax Reform Act of 1969, 83 Stat. 723. Since the condemnation transaction here at issue appears to straddle the 1969 amendment, the date of the transfer of title becomes significant.

There is no indication in the record as to exactly when, under New York law, title to the condemned property passed to Binghamton. A sally by this Court into New York condemnation

---

SEC. 1033. INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

\* \* \* \* \* \* \*

(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph \* \* \*

(B) PERIOD WITHIN WHICH PROPERTY MUST BE REPLACED.—The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending—

(i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

(ii) subject to such terms and conditions as may be specified by the Secretary or his delegate, at the close of such later date as the Secretary or his delegate may designate on application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe.

(C) TIME FOR ASSESSMENT OF DEFICIENCY ATTRIBUTABLE TO GAIN UPON CONVERSION.—If a taxpayer has made the election provided in subparagraph (A), then—

(i) the statutory period for the assessment of any deficiency, for any taxable year in which any part of the gain on such conversion is realized, attributable to such gain shall not expire prior to the expiration of 3 years from the date the Secretary or his delegate is notified by the taxpayer (in such manner as the Secretary or his delegate may by regulations prescribe) of the replacement of the converted property or of an intention not to replace, and

(ii) such deficiency may be assessed before the expiration of such 3-year period notwithstanding the provisions of section 6212(c) or the provisions of any other law or rule of law which would otherwise prevent such assessment.

[2] We note that new sec. 1033(f)(4) extends the replacement period for real property held for productive use in the trade or business, or for investment, to 3 years.

law is obviated, however, by the state of the record and by the parties' stipulations. Both parties assume that the 1-year replacement period applies to our facts—indicating that they both believe that title passed in 1965. Further, the parties have stipulated that the property was "condemned" in 1965. Given this unanimity of agreement among the parties, and because this is a reasonable interpretation of the record, we will here assume that title passed in 1965 and that the 1-year replacement period applies.[3]

A section 1033 election is made by way of either a statement attached to the property owner's return for the first year gain is realized, or by failing to report the gain at all—which is considered to result in a constructive election. Sec. 1.1033(a)–2(c)(2), Income Tax Regs. We have found that the partnership made an express section 1033 election for its taxable year 1970. That the partnership is the only entity who could make the election with respect to partnership property is clear. *Demirjian v. Commissioner*, 457 F.2d 1, 5 (3d Cir. 1972). The valid partnership election not only started the running of the 1-year replacement period, it also tolled the statute of limitations for assessment of a deficiency until the expiration of 3 years after the Secretary was notified by the taxpayer of (1) replacement of the converted property, or (2) intention not to replace. 26 C.F.R. sec. 1.1033(a)–(2) (2d ed. 1965). The regulations in 1965 stipulated that any application to the Secretary to extend the replacement period had to be made within the 1-year replacement period unless the taxpayer could show, to the satisfaction of the District Director, that (1) the taxpayer had reasonable cause for not filing the application within the required time, and (2) the application was filed within a reasonable time after the expiration of the required period of time. 26 C.F.R. sec. 1.1033(a)–2(c)(3) (2d ed. 1965).

But the partnership did not apply for an extension of its 1-

---

[3]But even if title were found to have passed in 1970, causing the 2-year replacement period to apply, our decision herein would be unaltered. This is because the taxpayers did not replace the condemned property within the 2 years after 1970, nor had they replaced the condemned property as of the time they filed their brief herein, February 1978. Thus, even if the 2-year replacement period applied, petitioners have still failed to meet the requirements of sec. 1033 which were a prerequisite to the privilege of not reporting 1970's gain in 1970. Having failed to live up to its representation to the respondent that it would replace in the sec. 1033 replacement period, the partnership should have filed an amended return for 1970. Sec. 1.1033(a)–2(c)(2), Income Tax Regs. Having failed to do so, it was the respondent's duty to assess the partners within the statutory period.

year replacement period until almost 1 year after the period's end. The respondent's denial of a request for an extension of the section 1033 replacement period because of the request's untimeliness cannot be overturned unless the denial was an abuse of discretion. *Boyce v. United States*, 405 F.2d 526, 531–532 (Ct. Cl. 1968). The untimeliness of the petitioners' request is precisely why the respondent refused to grant the extension. Petitioners have shown no basis for a finding that the respondent abused his discretion in refusing their application for an extension. We, therefore, need not dwell on this point further.

The respondent's notice would be timely if mailed within 3 years of a notice by the taxpayer to the respondent of the taxpayer's failure to replace. By his December 14, 1972, request for an extension which the respondent refused, the taxpayer notified the respondent of his failure to replace. Thus the respondent had until December 14, 1975, to mail his 90-day letter. Since the letter was mailed on November 24, 1975, it was within the statute.

But the taxpayer partners argue that their *individual* returns for their taxable year 1970 were timely filed in 1971. Further, they point out that they as individuals did not make a section 1033 election. Hence, they argue, the general statutory period of section 6501(a) applies to them, and that it ran in 1974.

The partners fail to explain on brief the relevance, in this case, of their individual returns to a liability charged against them as partners with respect to a partnership section 1033 election for partnership property. The petitioners are involved in this proceeding by reason of their participation in the partnership and not because of any activity conducted in their individual capacities. It is clear that when the respondent sent his notice of deficiency the statute had not run against petitioners with respect to their partnership's obligation under section 1033 for its 1970 condemnation income.

It is an accepted fact that partnerships partake of both aggregate and entity qualities. 1 W. McKee, W. Nelson, and R. Whitmore, Federal Taxation of Partnerships and Partners, sec. 1.02[1][2], pp. 1–5, 1–6 (1977). This is evident from the Code, itself. While the partnership as an entity must compute its tax and make all such elections as effect such computation (sec. 703(a) and (b)), the partnership is not itself a taxpaying entity

(sec. 701) and can have no freestanding tax liability. The tax liabilities arising out of the partnership activities are required to be reflected on each partner's individual return. Thus, though petitioners may well be correct that the statute of limitations has run with respect to their nonpartnership, nonsection 1033 items, it does not follow that the partners' individual responsibility for a partnership liability has expired, where as here, the partnership has invoked section 1033.

For Federal tax collection purposes a partnership can have no existence separate from that given it by its partners. The partnership may, for these purposes, be analogized to an agent of the partners. Petitioners, having reaped the benefits of their partnership's election to defer income by way of the section 1033 election, will not now be heard to deny the tax burden concomitant to that election. They cannot now divorce themselves from the partnership nor attempt to interpose some substanceless partnership "veil" between themselves and the tax collector. If that sort of insulation is desired a corporation or some other tax entity might be more proper.

The petitioners seek solace in the case of *Myers v. United States,* an unreported case (S.D. Cal. 1972, 30 AFTR2d 72–5332, 72–2 USTC par. 9669). There a partnership made a section 1033 election with respect to condemned partnership property and later failed to comply with the requirements of section 1033. The partnership had a fiscal year ending June 30 (30 AFTR 2d at 72–5337, 72–2 USTC par. 9669 at p. 85,638) while its partners were on calendar year. The partnership received a payment from the condemnor in September 1961. This payment was reportable by the partnership on its 1962 fiscal year return. It was also reportable by the partners in their 1962 returns. Sec. 706(a). Nevertheless, the respondent sought to charge the income to the partners' 1961 taxable year. The court correctly found for the taxpayers. We fail to see what succor petitioners can gain from this holding. In *Myers* the court did not, in our view, hold as petitioners would have us believe, i.e., that the section 1033 election tolled the statute "only for the partnership and not the individual partners."

Finally, the court notes that the respondent had the burden of showing that the general 3-year statute did not here apply. *Myers v. United States, supra* at 30 AFTR 2d 72–5336, 72–2 USTC par. 9669 at p. 85,637. This burden is met if the respondent

can show that the limitations period of section 1033(a)(2)(c) applies. *Myers v. United States, supra* at 30 AFTR2d 72–5336, 72–2 USTC par. 9669 at p. 85,637. That special limitations period applies if a section 1033 election has been made. Since the parties stipulated that an express section 1033 election was made, it is clear that the respondent carried his burden.

*Decisions will be entered for the respondent.*